DECONCINI MCDONALD YETWIN & LACY, P.C.
7310 NORTH 16TH STREET, SUITE 330
PHOENIX, ARIZONA 85020
PHONE: 602-282-0500
FAX: 602-282-0520
LHIRSCH@DMYLPHX.COM

LAWRENCE D. HIRSCH, #004982
ATTORNEY FOR DEBTORS

UNITED STATES BANKRUPTCY COURT

IN AND FOR THE DISTRICT OF ARIZONA

| In Re: | Chapter 13 |
|---|---|
| KENNETH K. ELLSWORTH and JESSICA T. ELLSWORTH | Case No. 2:07-bk-00986 CGC |
| Debtors | RESPONSE TO MOTION TO DISMISS |

Debtors, by and through counsel undersigned, hereby respond to the Motion to Dismiss filed by Creditor Lifescape Medical Association. P.C. (Lifescape) and request that this Court deny the relief sought and confirm Debtors' Chapter 13 Plan. Debtors incorporate by reference the attached Memorandum of Points and Authorities.

RESPECTFULLY SUBMITTED this 15th day of May, 2009

Lawrence D. Hirsch
Attorney for Debtors

MEMORANDUM OF POINTS AND AUTHORITIES

This Court has heard numerous arguments of the parties and has a factual understanding of the circumstances surrounding the filing of this matter. A short factual

1

review and nothing more, is therefore appropriate.  In October, 2003, Dr. Jessica Ellsworth was recruited from Mayo Clinic to work for the newly formed venture, Lifescape. She signed an employment contract with Lifescape which provided for a non-compete after the first year of the agreement; a 90 day notice was required to terminate the agreement. Upon advice of attorney, Dr. Ellsworth provided a 90 day notice intended to terminate the agreement at the end of the first year phrased in terms of renegotiating the agreement. When the one year period was expiring, Lifescape asked her to continue on due to the workload. She continued working until November, 2004. She left Lifescape in November 2004 and started working with a gynecology surgeon in January 2005. Lifescape objected to her practice as a violation of the non-compete provisions of her employment agreement. Lifescape sued to enjoin her from practicing and recover damages for violation of the employment agreement. Lifescape prevailed on the injunction in the trial court because the court ruled that the notice was "not convincing notice." Ellsworths appealed. The appellate court affirmed the decision and approved an award of attorney fees. The Arizona Supreme Court would not review the decision.  Ellsworths made a settlement offer of $50,000 shortly after the rendition of the final appellate decision in state court. The offer was rejected without a counteroffer. Ellsworths made a settlement offer shortly after filing the chapter 13 case. The offer was rejected; there was no counteroffer. Debtors' counsel has made many requests for a counteroffer since, but none were received. Ellsworths filed a chapter 13 bankruptcy on March 8, 2007. A settlement conference failed to resolve the dispute. Lifescape and the chapter 13 trustee have filed objections to the plan.

Lifescape continues to argue that this pending case has been filed in bad faith and that the Court should not allow confirmation. Lifescape argues long and loud that Debtors

are not making accurate disclosures of their income and expenses, yet never point to a single line item on numerous financial documents that is in error or is a mis-statement. Rather than be specific, Lifescape simply rants and raves in the hopes that if it repeats itself often enough the Court will believe it. The Court should not fall into this trap.

It is very important for this Court to keep its eye on the ball-what are the real issues herein? Debtors agree with Lifescape that good faith is a condition precedent to confirmation of a Chapter 13 Plan. They disagree with Lifescape's conclusions that this Petition and Plan has been filed in bad faith.

Lifescape relies almost exclusively on the 9th Circuit opinion in In re Leavitt, 171 F 3d 1219 (9th Cir. 1999) in urging this Court to dismiss this case for bad faith. A very simple review of the applicable facts in Leavitt will satisfy the Court that Leavitt, while good law, is simply inapplicable to the facts of this case. Jonathan Leavitt was a bad apple. He defrauded his partner, got caught and got sued. After a jury verdict was entered but before a final judgment could be signed, Leavitt filed for Chapter 13 relief.[1] He lied on his Schedules-omitting to list numerous assets and transfers and failing to disclose payments to family members and payments made to other creditors within the 90 days preceding the bankruptcy. His conduct, if his case had been filed under Chapter 7, would have certainly led to a finding that he was not entitled to a discharge under 11 U.S.C. §727. When his case was ultimately dismissed, he refiled numerous cases, even using a different social security number. The Court found that his behavior was egregious and dismissed the case with prejudice. The Court found a number of factors present that justified the conclusion-the

---

[1] Although not discussed in the 9th Circuit opinion, it is clear that Leavitt attempted to take advantage of the fact that the final judgment had not been entered so he would not have to count the debt as "unliquidated". This case also predated BAPCPA, so the fraud debt would have been dischargeable in chapter 13.

misrepresentations, lies and omissions on his Petition and Schedules, his filing history, his intent to "defeat" state court litigation and that other egregious behavior was present. He simply lied to the court as to his assets and liabilities. "Given the number of financial dealings and the value of the assets omitted, these omissions cannot be considered innocent." 171 F.3d at page 1225.

Debtors herein have not omitted assets. They have disclosed all of their financial records and have been open and honest with the court. They have never filed bankruptcy before and have engaged in no pre-Petition conduct which would give rise to a non-dischargeable debt. They have not manipulated the code or the facts to garner some unjust result. They are honest debtors who are entitled to the relief sought. While Leavitt is good law, it is a fact intensive case (with very bad facts) and cannot be applied to the facts of this case.

Lifescape continues to argue that Debtors have "manipulated" their financial information. They have accurately reported their income. In all the filings with this Court, Debtors' income for means test purposes has never been challenged or rejected by this Court-there have been numerous objections and arguments regarding the expenses and deductions that the Debtor may claim and how income is to be calculated, but this Court has never found that either Debtor has misrepresented their income. Lifescape simply repeats, over and over again, that the case should be dismissed because Debtors did not file an amended plan after the Court's ruling on how expenses were to be calculated for a self-employed Debtor engaged in business. Once Debtors recalculated Form 22C, it was unnecessary to amend the plan, as the results were no different-Debtors still have negative income as calculated by Form 22C, based upon their pre-Petition income and their post-

Petition business operating expenses. While Lifescape asserts, vehemently, that the financial records produced are inaccurate, it has not pointed out a single line item that is inflated or income that is understated.

Lifescape asserts that Debtors' payment of Dr. Ellworth's student loan is an example of manipulation by paying that expense through her medical practice. However, even if the payment were to be made by Dr. Ellsworth directly, it would have no impact on the plan or the flow of payments to Lifescape. 11 U.S.C. §1322 (b)(5) states that a plan may provide for payments to a secured or unsecured creditor whose final payment is due after the completion of the plan. This applies to Dr. Ellsworth's student loan. If the payment was not being made by the business, it would be included in Schedule J as a budget line item for a payment "outside the plan." There would be no net difference to Lifescape.

Did Debtors file for Bankruptcy relief to discharge the obligation to Lifescape? Yes. Many debtors file for bankruptcy relief because they cannot pay a large judgment which has been entered against them. Unlike Jonathan Leavitt, these Debtors filed for relief after the Arizona Supreme Court denied review of the judgment and numerous settlement efforts failed. Faced with no alternative, they filed for relief-under Chapter 13 and not under Chapter 7, as was their right. It is not argued herein that the underlying debt to Lifescape would not have been discharged in a hypothetical Chapter 7 case.

In the original arguments made to this Court regarding the original plan filed by Debtors and the original Form 22C filed by Debtors, this Court, relying on In re Ransom, 380 B.R. 799 (9th BAP 2007), held that Debtors could not claim a car payment expense allowed under the means test unless they actually had a car payment. The Court expressed its disagreement with the BAP decision, but felt bound to follow it. Since that argument

5

and ruling, the District Court for the Western District of Washington has published its decision in In re Armstrong, 395 B.R. 127 (D. Wash 2008), in which the District Court upheld a Bankruptcy Court decision allowing a debtor to claim a car payment expense authorized by the IRS Guidelines, even if the Debtor had no such payment. The Court aligned itself with the many courts that have found that the specific language of the Code, which provides that a Debtor will use certain "allowed" as opposed to "actual" expenses in certain categories meant that the Debtor could claim the expense even if not an actual expense.

This Court is free to follow either line of cases-the ruling of the BAP is entitled to no more precedential value than is the District Court for the Western District of Washington. Neither case comes from Arizona and the BAP and the District Court are of equal standing in the appellate ladder. Lifescape's insistence that Debtors' claim of the car payment is indicia of bad faith is misplaced. It is not bad faith to simply claim an expense which the law allows them to claim. In In re Mati, 390 B.R. 11 (Bankr. D. Mass 2008), the Bankruptcy Court upheld the Debtor's right to claim a car payment deduction even where no payment existed and to continue to contribute to a 401(k) plan, rather than use those funds to pay creditors.

> The Court finds that the Debtor's 401(k) contributions do not evidence bad faith under the totality of the circumstances in this case. The Debtor is merely taking advantage of what the law allows. Indeed, by excluding 401(k) contributions from property of the estate and expressly removing them from the definition of disposable income under section 1325(b), Congress has implemented a policy of protecting and encouraging retirement savings. BAPCPA's amendments to section 1325(b) alter the good faith inquiry under section 1325(a)(3) by narrowing the scope of judicial discretion and excluding certain sources of income that do not need to be committed to Chapter 13 plans. Mati at 17.

In its prior ruling entered on January 10, 2009, this Court determined that the Debtors could not utilize historic data on business operating expenses but instead must apply business expenses based upon anticipated expenses. Debtors have complied with that directive in the revised means test that was submitted subsequent to that decision.[2] Debtors did not include the historic attorney's fees which had been paid to their prior counsel for the litigation that ended before the bankruptcy was filed. However, they did provide for an average of the attorneys' fees they have incurred since the filing of the bankruptcy. The business expenses which are attached to Form 22C represent an average of the business expenses incurred by the Debtor in the operation of her business for the one year period after the Petition was filed. It is consistent with the monthly operating reports filed by the Debtors and consistent with the recently filed financial records submitted to the Court and to the Trustee and to Lifescape. Lifescape can only point to a car payment deduction and the inclusion of attorney's fees as alleged misstatements in the Form 22C. The car deduction is appropriate and the fees are those which have actually been incurred post-Petition (they would be Administrative Expenses of the Estate, payable ahead of Lifescape's claim, even if the fees were paid by Debtors and not by her business). The amended Form 22C was filed almost four months ago. During this period of time, neither the trustee nor Lifescape have challenged the propriety of the expenses stated. The income stated remains the same-the average of the six month income preceding the filing of the case.

For some unknown reason, Lifescape wants to focus (and wants the Court and the

---

[2] Lifescape's claim that the "Income and Expense" form attached to amended Form 22C is an example of "bad faith" by failing to list income. The form is specifically indentified in Form 22C as an expense addendum.

Trustee to focus) on Debtor's post-Petition income. That income is not relevant to the decisions to be made by this Court. It is undisputed that Debtors are above-median income Debtors. Therefore, disposable income is to be determined based upon 11 U.S.C. §707(b)(2)(A) and (B). In re Kagenveama, 541 F3d 868 (9th Cir. 2008). The Court's inquiry into income is limited to the income earned by the Debtors during the six month period prior to the filing of the case. Disposable income will be based upon taking that income and subtracting the list of "allowed" and "actual" expenses provided for in the means test-personal expenses based upon the expenses incurred during the six months prior (and for secured debts, those payments which were contractually due) and for business operating expenses, looking at anticipated expenses necessary for the operation of the business. Neither the Court nor the Trustee and Lifescape should make inquiries into the Debtors' income after the filing of the Bankruptcy or the propriety of non-business expenses.

"Before the BAPCPA amendments took effect, calculating disposable income involved a flexible and value judgment-laden inquiry into the propriety of Schedule I and J. In contrast, the bright line test of the amended §1325(b) is a purely mathematical endeavor admitting of no discretion." In re Mancl, 381 B.R. 537, 541 (W.D. Wis. 2008). While this may seem to be at odds with Congressional intent to increase payments to creditors in Chapter 13, it is consistent with the intent to remove discretion from the equation.

> Moreover, requiring strict adherence to the statute is entirely consistent with congressional objectives in changing the law. Replacing the previous nuanced and discretionary computation of disposable income with the uncompromising six-month average income determination deprived bankruptcy courts of discretion and made a certain number of harsh results inevitable for both debtors and creditors. It also enhanced consistency and predictability and limited the opportunities for manipulation of the process. There is no reason to believe that Congress did not anticipate and intend both of these effects. To the contrary, it is very likely that Congress anticipated the precise

circumstances of this case, in which a pre-petition decline in income precipitates a bankruptcy filing, leaving debtors in a position of having to pay less than under the former regime. Marianne B. Culhane & Michaela M. White, Catching Can-Pay Debtors: Is the Means Test the Only Way, 13 Am. Bankr. Inst. L. Rev. 665, 682 (2005)(citing legislative history that Chapter 13 trustees informed Congress that BAPCPA would have the effect of reducing required payments for some high income debtors). Although it is understandable that bankruptcy courts might resist strict adherence to the code's new requirements in favor of retaining their former discretionary powers, it is apparent from the language and history of the BAPCPA that adherence to objectively defined standards and reduces judicial discretion is what Congress intended. In re Mancl, 381 B.R. at 541.

This Court has stated from the bench that it is concerned about the Debtor's $900 car payment and $3,000 house payment. Prior to 2005, it may have been appropriate for the Court to inquire as to the reasonableness of those expenses. It is no longer an issue subject to review by this Court.

> [t]he determination of disposable income is now meant to be a simple and straightforward matter of arithmetic based on sections 707(b)(2)(A) and (B). Debtors may claim applicable expenses under the IRS National and Local Standards and may also claim actual Other Necessary Expenses without any judicial consideration of whether those expenses are in fact 'reasonably necessary'...If the reasonable necessity of a debtor's expenses is no longer relevant then plainly the debtor's good faith in claiming them cannot be relevant. In re Chavez, 2008 WL 3023145 at 6.

Disposable income is simply a bright line test based upon the allowed expenses. In re Barr, 341 B.R. 181 (Bankr. M.D.N.C. 2006). The Debtors are free to keep any and all secured property and account for the payments on secured debt for which they were contractually obligated to pay on the Petition date as allowed expenses on Form 22C. If the application of the means test results in no required payment to unsecured creditors, the Court is without discretion to find bad faith based upon the retention of "luxury" items, contributions to pension plans or repayment of 401(K) loans.

9

Congress demonstrated a determination to replace judicial discretion under general standards with precise rules-based calculations. One can understand why bankruptcy judges would chafe at such restrictions, but that does not mean that Congress did not mean what it said. So long as the debtor calculates the projected disposable income with specific reference to the new definition of disposable income and commits that projected disposable income to pay unsecured creditors for the applicable commitment period, she is in good faith compliance with the Code. In re Alexander, 344 B.R. 742, 752-53 (Bankr. E.D. N.C. 2006).

A similar result was reached by the Bankruptcy Court in In re Sallee, in which the court stated:

> The debtors argue that because §707(b)(2)(A)(iii)(I) permits above-median income debtors to deduct secured debt payments in determining disposable income, the Court is precluded from reviewing the reasonableness or necessity of those payments. The Court agrees. Under BAPCPA, a court's subjective determination of whether expense deductions under §707(b)(2)(A)(iii)(I) are 'reasonably necessary' is irrelevant. The Court in In re Carlton, 362 B.R. 402 (Bankr. C.D. Ill. 2007) reached the same conclusion. In that case, debtors listed an expense deduction on line 47 of Form 22C for a Cadillac Escalade. The trustee objected that the Escalade was a luxury vehicle which was not reasonably necessary for the debtors. The Court rejected the trustee's argument, holding that for above-median income debtors, "the Court does not use its own judgment on reasonableness or necessity but, rather, must determine whether a particular expense is allowed by § 707(b)(2), it meets the new definition of "reasonably necessary" and no subjective review of the expense by the Court is permitted," Id at 411. The Court finds this reasoning persuasive. Therefore, the holding in *Rybicki* – that expense deductions must be reasonably necessary – no longer applies for above-median income debtors. As such, the Trustee's objection based on the holding of *Rybicki* is overruled. In re Sallee, 2007 WL 3407738 at 2 (Bankr. S.D. Ill. Nov. 15, 2007).

The Ninth Circuit, in Kagenveama, supra, reached the same conclusion:

> Finally, the disposition required by the plain text of § 1325(b) is not absurd. Section 1325(b)'s new approach to calculating "disposable income" for above-median debtors produces a less favorable result for unsecured creditors when "disposable income" is plugged into the "projected disposable income" calculation. We "will not override the definition and process for calculating disposable income under § 1325(b)(2)-(3) as absurd simply because it leads to results that are not aligned with the old law." *citing* In re Alexander at 747. Furthermore, we

10

will not de-couple "disposable income" from the "projected disposable income" calculation simply to arrive at a more favorable result for unsecured creditors, especially when the plain text and precedent dictate the linkage of the two terms. In re Anderson, 21 F.3d at 358 (stating that "§ 1325(b)(1)(B) requires provision for 'payment of all projected disposable income' as calculated at the time of confirmation, and we reject the Trustee's attempt to impose a different, more burdensome requirement on the debtors' plan as a prerequisite to confirmation"). If the changes imposed by BAPCPA arose from poor policy choices that produced undesirable results, it is up to Congress, not the courts, to amend the statute. See Lamie, 540 U.S. at 542. Furthermore, Chapter 13 trustees were aware of the change in the law and notified Congress of their concerns before BAPCPA was passed, but Congress failed to act. In re Alexander, at 747-748; Marianne B. Culhane & Michaela M. White, Catching Can-Pay Debtors: Is the Means Test the Only Way, 13 Am. Bankr. Inst. L. Rev. 665, 682 (2005). Absent any revision by congress, we presume that it was aware of the new result, and the decision not to amend the statute was intentional. Lamie, 540 U.S. at 541. While the new law may produce less favorable results for unsecured creditors when applied to above-median income Chapter 13 debtors, it is far from absurd to hold that debtors with no "disposable income" have no "projected disposable income." See In re Alexander, 344 B.R. at 750. Furthermore, if the debtor's income increases after the plan is confirmed, the trustee may seek plan modification under § 1329. Kagenveama at 875.

The Debtors herein have done nothing other than list the personal expenses which they believe the law allows them to claim. While the Trustee and Lifescape may argue the appropriateness of the claimed deductions, it cannot be "bad faith" for them to claim those deductions. The Court will have to decide if the deductions are allowable. If the Court finds that the deductions are permissible, the result will be that the Debtors will be devoted far more than their projected disposable income to a plan and have even offered to extend those payments for a total of 60 months and add a balloon payment at the end. It would be fully within their rights and well within the definition of "good faith" to simply terminate the plan now and get a discharge-they have certainly paid far in excess of projected disposable income already. In re Young, 392 B.R. 6 (Bankr. D. Mass 2008) "[i]t is not bad faith to propose a Chapter 13 plan that commits the least amount of income required by the

Code." In re Smith, 401 B.R. 469, 477 (Bankr. W.D Wash. 2008). If it is not bad faith to propose a plan with the least amount of payment possible, how can it be bad faith to propose a plan which pays $50,000 more than projected disposable income would require?

Judge Leif Clark, in In re Barfknecht, 378 B.R. 154 (Bankr. W.D. Tex. 2007), authored a very thorough analysis of projected disposable income and the means test. He determined that the amount of the monthly payment was irrelevant to the good faith analysis of plan confirmation so long as the Debtor complied with 1325 (b). The Debtor received Social Security payments and did not account for them in calculating plan payments since the means test excludes Social Security payments from a calculation of income.

> If anything, the enactment of BAPCPA calls into doubt whether a debtor's retention of Social Security benefits may ever be a factor to consider under the good faith standard. Several courts have held that, when the Bankruptcy code specifically addresses a particular issue, the good faith standard should not be expanded to alter the statutory treatment of that issue. *See, e.g.*, Matter of Smith, 848 F.2d 813, 820-21 (7th Cir. 1988) ("Since Congress has now dealt with the issue quite specifically in the ability-to-pay provision, there is no longer any reason for the amount of a debtor's payments to be considered as ever part of the good faith standard."); In re Alexander, 344 B.R. at 752 (agreeing with another court that "the debtor's disposable income must be determined under § 1325(b) and not as an element of good faith under § 1325(a)(3)") (*citing* In re Barr, 341 B.R. at 186 and Marianne B. Culhane & Michaela M. White, Catching Can-Pay Debtors: Is the Means Test the Only Way, 13 Am. Bankr. Inst. L. Rev. 665, 681 (2005); *see also* In re Rotunda, 349 B.R. at 333 (denying a chapter 13 trustee's objection based on Congress' policy decision in amending section 1325); *see also* 8 Collier's on Bankruptcy ¶ 1325.04[1] (15th ed. 2007). The Bankruptcy code specifically states that Social Security benefits are excluded as income of the debtor for purposes of satisfying the debtor's ability to pay test. The good faith test in section 1325(a)(3) serves a salutary purpose to be sure-cutting off abuse. But it strikes this court at least as an odd reading of the code indeed to conclude that a debtor's *following* the Code, without more, could constitute abuse of the bankruptcy process. That sort of over-reading of the good faith standard would allow a court, in the name of good faith, to ignore or overrule whole sections of the Code, an irresponsible approach to

statutory construction if ever there was one. In re Barfknecht, 378 B.R. 154, 164-65 (Bankr. W.D. Tex. 2007).

Will the strict application of the means test to above median income debtors result in creditors receiving less in a Chapter 13 than they would have previously? It is certainly possible. However, that does not justify this Court from failing to comply with the Code.

> In adopting this interpretation of § 1325(b), the court is aware that in certain instances the results of a given case will appear contradictory to at least one of the policies underlying BAPCPA. However, simply because the statutory language chosen by Congress does not produce the intended result when applied to each and every case is not reason to disregard the language of the statute when it is reasonably clear. *See* Dodd v. United States, 545 U.S. 353, 357, 125 S.Ct. 2478, 162 L.Ed. 2d 343 (2005) ("We 'must presume that [the] legislature says in a statute what it means and mean in a statute what it says there.'")(quoting Conn. Nat. Bank v. Germain, 503 U.S. 249, 253-254, 112 S.Ct. 1146, 117 L.Ed. 2d 391 (1992)). Unless a given statute produces absurd results, courts are to apply the statute according to its terms. Id. at 359, 125 S.Ct. 2478.
>
> As one court has noted "it is a rare occasion when a legislature's effort to establish specific guidelines is so refined that its application is guaranteed to be uniformly fair. It is inevitable that some nuance will have been overlooked. Nonetheless, the courts are bound to enforce what the legislature has enacted." In re McGillis, 370 B.R. at 726. Thus, the result here while it may not conform to one of the policies underlying the enactment of BAPCPA, is not absurd. It is the result of a conscious choice by Congress to remove judicial discretion from the calculation of "disposable income" and "projected disposable income." This choice may produce odd results in certain cases at the margins, but that is not reason for the court to disregard congress's work. *See* Spivey v. Vertrue, Inc., 528 F.3d 982, 984 (7th Cir. 2008)(noting Congress's writing of a law "imprecisely, or even perversely, is not a sufficient reason to disregard the enacted language."). Musselman v. Ecast Settlement Corp., 394 B.R. 801, 812-13 (E.D.N.C. 2008).

The Debtors and their accountants stand ready, willing and able to address the Court's concerns about disposable income and to answer any relevant questions posed by the Trustee or by Lifescape. However, this inquiry should be limited to the issues which are germane hereto-what are the allowed expenses for the Debtors and what is their

13

disposable income as that term is defined by 707(b). Any investigation or questioning regarding post-Petition income is simply not relevant and is outside the scope of this proceeding.

Debtors urge this Court to confirm their plan and overrule the objections of Lifescape. Debtors have been forthright, open and honest in disclosing their income and expenses. Debtors have utilized the forms provided to them by the Chapter 13 to complete monthly operating reports and have done so to the best of their abilities. If the form does not provide the Court with all of the information which the Court would like, the fault lies with the form and not with the Debtors. A review of the Form 22C prepared in compliance with this Court's January 10, 2009 decision will lead this Court to conclude that the Debtors are providing far more than their projected disposable income to the plan and the plan should be confirmed. The objections filed by Lifescape should be overruled and the Motion to Dismiss should be denied.

Respectfully submitted this 15th day of May 2009,

DECONCINI MCDONALD YETWIN & LACY, P.C.

/s/ Lawrence D. Hirsch, #004982
Lawrence D. Hirsch
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020
Attorney for Debtors

A copy of the foregoing was mailed
this 15th day of May 2009 to:

14

JOSEPH E. COTTERMAN
LINDSI M. WEBER
GALLAGHER & KENNEDY, PA
2575 E. CAMELBACK ROAD
PHOENIX, AZ 85016-9225
ATTORNEYS FOR LIFESCAPE MEDICAL ASSOCIATES, PC


EDWARD J. MANEY
CHAPTER 13 TRUSTEE
P.O. BOX 10434
PHOENIX, AZ 85064-0434


By: /s/ Linda Miernik
Legal Assistant to Lawrence D. Hirsch
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020