1  Joseph E. Cotterman (Bar No. 13800)
   GALLAGHER & KENNEDY, P.A.
2  2575 East Camelback Road
   Phoenix, Arizona 85016-9225
3  Telephone:  (602) 530-8000
   Facsimile:   (602) 530-8500
4  Email:        jec@gknet.com
   Attorneys for LifeScape Medical Associates, P.C.
5
   Lawrence D. Hirsch
6  DeConcini McDonald Yetwin & Lacy, PC
   7310 N. 16 Street
7  Phoenix, AZ 85020
   Telephone: 602-282-0472
8  Fax : 602-282-0520
   Email: lhirsch@dmylphx.com
9  Attorneys for Debtors

10 Ronald L. Hoffbauer (006888)
   P.O. Box 10434
11 Phoenix, Arizona 85064
   602-277-3776
12 ronh@maney13trustee.com
   Attorney for Edward J. Maney,
13     Chapter 13 Trustee

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

In re:

KENNETH KARL ELLSWORTH and
JESSICA TERESA ELLSWORTH, husband
and wife,

Debtors.

Case No. 2-07-bk-0986

Chapter 13

**JOINT PRETRIAL STATEMENT REGARDING MOTION TO DISMISS**

Hearing Date: September 2, 2009
Time: 9:00 a.m.
Courtroom: 601

Debtors, LifeScape Medical Associates, P.C. ("LifeScape"), and the Chapter 13 Trustee (collectively the "Parties"), through undersigned counsel, hereby submit the

following Joint Pretrial Statement for purposes of the final hearing on LifeScape's Motion To Dismiss filed on April 3, 2009 at ECF docket number 92 (the "Motion"):

**I.    JURISDICTION.**

LifeScape and Debtor agree that jurisdiction is vested in this Court under 28 U.S.C. §§ 1334, 151 and 157 (b)(2)(A) and (O).  The parties further agree that this matter constitutes a "core proceeding" pursuant to 28 U.S.C. § 157(b) (2)(A) and (O), thereby empowering this Court to enter a final judgment and order adjudicating this matter.

**II.   STATEMENT OF THE CASE**

   **A.    LifeScape's Statement Of The Case**

This case involves LifeScape's Motion To Dismiss the Debtors' Chapter 13 case as a bad faith filing.  The bad faith becomes apparent not in the many details of the statements, schedules, monthly operating reports, plans, and related pleadings on file in this case, but when viewing the result of those details: Debtors will avoid paying the bulk of LifeScape's claim while they pay every other pre-petition and post-petition creditor in full.  The income, asset, and cash flow information filed with the court all operates to achieve this result, all to LifeScape's detriment.  This is an ongoing two-party dispute that the bankruptcy process should not facilitate.

LifeScape asserts that dismissal is warranted, in part, due to the circumstances of the filing, specifically in regard to the state court litigation between Debtors and LifeScape and Debtors' financial affairs otherwise.  LifeScape asserts that Debtors filed this case solely to defeat the state court litigation between the parties wherein LifeScape prevailed shortly before the petition date.

LifeScape also asserts that the financial information provided by Debtors in their statements and schedules, exhibits thereto, and other papers filed in this case misrepresents and understates their income and thereby further evidences bad faith justifying dismissal. LifeScape contends that the improperly understated and misrepresented figures would

2

support a Chapter 13 plan that pays unsecured creditors an improperly small distribution on their unsecured claims.

Finally, LifeScape asserts that Debtors' failure to file an amended Chapter 13 plan as directed by the Court in its Under Advisement Decision entered January 12, 2009 at ECF docket 88 (the "Decision"), evidences Debtors' bad faith, and also constitutes cause for dismissal within the meaning of 11 U.S.C. §1307(c).

**B.     Debtors' Statement Of The Case**

Debtors acknowledge that this litigation concerns LifeScape's assertion that this pending Chapter 13 was filed in bad faith. Debtors dispute the assertions made by LifeScape regarding the relationship between the parties and the underlying facts of the case. Debtors assert that they are unable to pay the debt owed LifeScape after many efforts to settle the dispute.

Debtors assert that all financial information provided to LifeScape and the Court is complete and accurate, with the exception of one document, which was filed in error and without knowledge as to its inaccuracy. (The original year-end 2006 records of the practice that were filed with the Court was a draft and had not been completed by the accountants). All other financial documents, schedules and financial records submitted by the Debtors have been accurate and based upon information prepared by their accountants who obtained the information from the books and records of the business. An additional document was filed in error by Hirsch Law Office-a 2006 financial statement that reflects another business entity and is unrelated to this case.

Debtors did not file another amended plan after the February 2009 Under Advisement ruling. Debtors completed the amended B22C in accordance with the rulings of the Court and the Debtors still show no disposable income. Amending the plan was neither necessary nor appropriate under the circumstances.

3

**C. The Chapter 13 Trustee's Statement Of The Case.**

The Debtors' continued payment of Debtors personal obligation on the 2007 Mercedes Benz and Debtor Jessica Ellsworth personal obligation on her student loan obligations subsequent to the filing of the petition by her PLLC evidences Debtors' lack of good faith. The continued payment of the student loan obligations would result in preferential treatment of those unsecured debts to the detriment of Debtors' only other unsecured obligation owed to Lifescape.

The payment of these debts and legal fees to bankruptcy counsel by the PLLC without prior application and approval of those legal fees reduces Debtors' income.

Although Debtors have amended their Schedules, the Debtors' tax returns show that Debtors have a health savings account that is not listed as an asset on Schedule B and the valuation of the PLLC on Schedule B does not appear to account for any pending receivables on the date of filing.

**III. UNCONTESTED MATERIAL FACTS.**

For purposes of this litigation only, the parties agree to the following uncontested material facts.

1. On January 3, 2005, LifeScape commenced litigation against Debtors in Maricopa County Superior Court Case No. CV2005-000004 (the "State Litigation").

2. Debtors closed on the purchase of their current residence in July, 2005.

3. LifeScape prevailed in the State Litigation on or about April 6, 2005, and, Debtors filed a notice of appeal on or about May 5, 2005.

4. LifeScape prevailed at the Court of Appeals in the State Court Litigation, and by order dated June 29, 2006, the Court of Appeals awarded LifeScape its attorneys' fees and costs incurred on appeal. Debtors thereafter filed a petition for review with the Arizona Supreme Court, which was denied.

5. After denial of Debtors' petition for review, the Court of Appeals issued its

4

mandate in the State Court Litigation on January 11, 2007, which included the award of attorneys' fees and costs on appeal in favor of LifeScape.

6. On February 9, 2007, LifeScape filed its Motion for Judgment Pursuant To Mandate, seeking entry of judgment for the fees and costs awarded on appeal, and seeking an award of fees and costs incurred at the trial level in the State Court Litigation.

7. By agreement of the parties, Debtors' deadline to respond to the Motion For Judgment Pursuant To Mandate was extended to March 8, 2007. On that date, Debtors filed their voluntary petition for relief under Chapter 13 of the Bankruptcy Code (the "Petition Date"). Debtors did not file a response to the Motion For Judgment Pursuant To Mandate in the State Court Litigation

8. Debtors' Schedule F – Creditors Holding Unsecured Non-priority Claims- filed in this Chapter 13 case, lists three unsecured creditors; two of those creditors are lenders or servicers on Mrs. Ellsworth's student loans; the other unsecured creditor is LifeScape.

9. On or about December 22, 2006, Debtors and the Medical Practice, at that time not yet incorporated or officially formed, jointly purchased a 2007 Mercedes Benz ML 350 for a total purchase price including tax of approximately $54,000.00. In connection therewith, Debtors paid a down payment of $7,000.00 and jointly with the Medical Practice, borrowed approximately $47,000.00.

10. In or about July 2005, Debtors purchased their residence for a purchase price of approximately $855,000.00. In connection therewith, they borrowed approximately $650,000.00 from Citi Mortgage.

11. Mrs. Ellsworth's medical practice has written the checks for the monthly payments due on her student loans throughout the pendency of this Chapter 13 case.

12. Mrs. Ellsworth's medical practice has written the checks for the monthly payments due on the vehicle throughout the pendency of this Chapter 13 case.

1702195v5/15788-0003

13. Debtors' 2006 1040 Income Tax return lists $113,733.00 in adjusted gross income and $47,741 in taxable income.

14. Debtors did not list any creditors on their "Schedule E – Creditors Holding Unsecured Priority Claims".

15. Debtors listed two creditors on their "Schedule D – Creditors Holding Secured Claims". Those two creditors are Chase, and Citi Mortgage, the secured lenders on the Mercedes and their residence, respectively.

16. Debtors filed the articles of organization for Family Practice of Scottsdale, PLLC on or about December 21, 2004 and the articles were published in October, 2007.

## IV. <u>**DEBTOR'S STATEMENT OF CONTESTED MATERIAL FACTS.**</u>

1. The Delay in the publication of the Articles of Organization of the PLLC was due to the error of the attorney hired to prepare the Articles.

2. The "Election by a Small Business Corporation, Form 2553, was filed with the Internal Revenue Service on November 1, 2006 for the PLLC to be taxed as an S corporation beginning with the tax year January 1, 2007.

3. Payments for the student loans have not been deducted from the net income from the business, but recorded as a draw by the shareholder. The draws are subject to taxation on the personal tax return. In the means tests, they are not included as debt payments, which normally would reduce the amount of cash available on schedule I and J.

4. Form B22C and Statements and Schedules that were filed per instructions from the Bankruptcy Court, show the actual revenue and business expenses of the practice. The Forms and Schedules show the net income that the practice has earned, per both IRS guidelines and Form B22C guidelines, which use the Department of Justice schedules. To imply, as LifeScape implies, that the Forms were purposefully hiding information shows a

6

lack of understanding of the Form B22C and the results of following the instructions of that form.

5. In his deposition the CPA explained why draws were treated as "loans" for tax purposes. At no time did the Ellsworth's know or believe that they had borrowed money from the practice. There were no loan documents. All "loans" were reclassified when basis was reestablished as draws. This is simply an accounting practice and does not imply that "loans" were made. All revenues attributed to Dr. Ellsworth have been accounted for as income, regardless of accounting classification

6. Jon Moser's testimony at his deposition was that the balance sheet did reflect all draws and personal expenses paid on behalf of Dr. Ellsworth as draws from the company. The Means Test form does not ask for draws because it was designed for self-employed individuals. The accounting and tax treatment of draws for an S corporation is treated the same as for self-employed individuals. Just like self-employed individuals, money taken out of the business to pay for personal expenses would not change net income on Form B22C.

7. In 2006, based on the purchase being within days of yearend, there was no personal use of the automobile. In 2007, Dr. Ellsworth did not receive a salary due to the uncertainty of the bankruptcy and the hiring of a new physician. Therefore, income was not assigned her for the personal use of the automobile. In 2008, Dr. Ellsworth took a salary and on her personal tax return shows $3,527 as income for the personal use of the business automobile. This amount was based on IRS guidelines for personal used calculations.

8. All information provided to the Court (other than one mistake by Debtors' counsel and one financial statement that had not been finalized) has been accurate and complete. The Debtors originally prepared their Form B22C based upon their belief that they were required to report pre Petition expenses as well as pre-Petition income. The numbers provided were accurate, even though the Court ultimately ruled that the form

1702195v5/15788-0003

1 needed to report projected expenses and that those expenses were not to be deducted from
2 income prior to determining if the Debtors were "below" or "above" median income
3 Debtors, notwithstanding the terms and conditions of the Form itself.  The Debtors amended
4 the Form B22C in July 2007 to report only the net income for Dr. Ellsworth and not report
5 gross income or business expenses.  The Court directed the Debtors to revise the Form to
6 include all income of the practice and anticipated future expenses.  No one has challenged
7 the income or expense figures provided on these forms, other than filing the incomplete
8 2006 year end income statement in the original filing.  The Court raised concerns about the
9 discrepancies in the two 2006 reports and Jon Moser will confirm that the wrong document
10 was provided to the Court in error, and that the correct income statement was used to
11 prepare the income tax return for the medical practice.  A new Form B22C, in compliance
12 with the recent 9th Circuit decision of in re Ransom has been prepared and will be filed with
13 the Court and provided to opposing counsel prior to the hearing.  In the interest of caution,
14 Debtors have removed all car payments and allowances from the amended form, even
15 though they are entitled to some deduction for the personal use of the business vehicle.

16      9. Debtors have not manipulated the Bankruptcy process.  They are hard
17 working honest people who have been placed in the untenable position of having a debt they
18 cannot pay while at the same time having lived a responsible life, free from debt.  The fact
19 that they have no other unsecured debts other than LifeScape and student loans reflects their
20 integrity and responsibility, not the intent to avoid their responsibilities.

21      10. Debtors did not purchase a house or car in expectation of filing a bankruptcy.
22 Upon receipt of the notice of the pending lawsuit, their attorneys told the Debtors that they
23 would be successful in the litigation.  No thought of incurring such a high litigation debt
24 was part of their consideration as to buying new house.  They focused, like most of us, on
25 the prospect of building a large retirement nest egg in the form of home equity. The debtors
26 made a down payment of approximately $205,000, well over the homestead exemption.

8

At the end of Dr. Ellsworth's first year of being in practice by herself, their accountants advised them to purchase the SUV. Debtors purchased the vehicle upon the advice of their CPA, based both on tax purposes and the need of a reliable replacement vehicle for Dr. Ellsworth. The house purchased process began in March of 2005 and was finalized in July 2005, twenty months prior to the filing of the Bankruptcy. Two months before the final ruling, the SUV was purchased in December 2006 in order to take advantage of a provision of the tax code and to meet the needs of Dr. Ellsworth for a new vehicle. The SUV was purchased for the medical practice and its size satisfied the requirements of the Internal Revenue Code. Whether the SUV was a Mercedes or a Suburban is immaterial. All SUV's that meet the weight requirements for Section 179 depreciation are in a similar price range. To differentiate the model from one type to another would not materially reduce the purchase price. Dr. Ellsworth purchased a Mercedes SUV for $53,500. If she had purchased a Suburban or a Tahoe for the same price, her financial condition would not change.

11.  Debtors signed a purchase agreement to purchase their current residence in approximately April 2005.

12.  In mid-December 2006, Dr. Ellsworth met with Michael Marriott, CPA to discuss tax planning. Due to the tax burden for 2006 and the fact that Debtor Jessica Ellsworth was driving a ten-year old Subaru Outback and needed a more reliable car to travel to hospitals and other locations for patients and business, the advice was given to buy a new car. The advice was also given to purchase a vehicle that qualified for the IRS' Section 179 accelerated depreciation of $25,000. At no time was there discussion about the lawsuit pending between the Ellsworths and LifeScape. No plans of incurring debt before the time limitation of filing for bankruptcy were ever discussed, as LifeScape has implied.

13.  After LifeScape prevailed in the State Litigation, the debtors concluded that

9

1 they could not pay the judgment and made the decision to file bankruptcy rather than
2 continue to incur attorney's fees in fighting a useless battle.

3     14.    Debtors' statements and schedules list so few unsecured nonpriority
4 creditors because they did not and do not incur credit card debt, but for the refusal of
5 LifeScape to negotiate in good faith, this case would never have been filed.

6     15.    The final payment on the student loan is due years after the final
7 payment will be due under the chapter 13 plan. Under applicable bankruptcy law, this
8 payment can be paid "outside the plan." The payments made on the student loan by the
9 medical practice (whether as a sole proprietorship or as a PLLC being taxed as a pass-
10 through entity) have been attributed to Jessica Ellsworth as income.

11     16.    The car purchased in 2006 was purchased under the name of the business.
12 Dr. Ellsworth has recognized income for her personal use of the vehicle. The deductions
13 available due to the purchase of the car resulted in significant tax savings to the business
14 and to the Debtors personally.

15     17.    Debtors did not list any creditors on their "Schedule E – Creditors Holding
16 Unsecured Priority Claims" because the Debtors have always paid their taxes in a timely
17 manner.

18 **V.**    **LIFESCAPE'S STATEMENT OF CONTESTED MATERIAL FACTS.**

19      LifeScape sets forth the following material statements of fact, which are disputed
20 by Debtor:

21     1.    LifeScape incorporates herein all the factual statements and assertions set
22 forth in its Motion to the extent not set forth above as an undisputed material fact.

23     2.    The Statements Of Revenue And Expenses included as Exhibits to the several
24 Form B-22 and Statements and Schedules filed, which are utilized to support and calculate
25 Debtor's income, do not reflect the income Dr. Ellsworth has received from Family Practice
26 of Scottsdale PLLC (hereinafter the "Medical Practice") in the form of salary, owner's

10

draws, personal expenses paid by the Medical Practice, or Loans later recharacterized as draws.

3. Between September 2006 and March 2009, Dr. Ellsworth has taken owner's draws from the Medical Practice in excess of $50,000.00. Those owner's draws are not reflected in the Statements and Schedules or monthly operating reports filed in this Chapter 13 case.

4. Between September 2006 and March 2009, Dr. Ellsworth has taken loans from the Medical Practice in excess of $20,000.00. Those loans are not reflected in the Statements and Schedules or monthly operating reports filed in this Chapter 13 case

5. Between September 2006 and March 2009, the Medical Practice paid personal expenses of Dr. Ellsworth in excess of $49,000.00. Those loans are not reflected in the Statements and Schedules or monthly operating reports filed in this Chapter 13 case Between January 2007 and March 2009, the Medical Practice paid Dr. Ellsworth a salary in excess of $39,000.00. That salary is not reflected in the Statements and Schedules or monthly operating reports filed in this Chapter 13 case

6. As of July 2007, Debtors' accountant valued the Medical Practice's FF&E in excess of $17,000.00.

7. The Medical Practice has timely paid the monthly payments on Dr. Ellsworth's student loans throughout the pendency of this case. The Medical Practice has timely paid the monthly payments on the Mercedes throughout the pendency of this case.

8. Debtor's 2007 1040 Income Tax return lists $138,702.00 in adjusted gross income and 76,390.00 in taxable income.

9. Debtor's 2008 1040 Income Tax return lists $189,556.00 in adjusted gross income and $119,211.00 in taxable income.

10. Dr. Ellsworth uses the Mercedes as her personal vehicle.

11

1          11.     Debtors did not disclose the State Court Litigation when they applied for
2   loans for their residence or the Mercedes.
3          12.     As they are currently being treated, all unsecured and secured creditors listed
4   by Debtors, other than LifeScape, will be paid in full either through, or outside of, the plan.

**VI.    CONTESTED ISSUES OF FACT AND/OR LAW.**

**a)      Whether Debtors have misrepresented their income in their statements and schedules, form B-22, and supporting exhibits?**

(1)     LifeScape's Position:

Dr. Ellsworth's income is not reflected in any of Debtor's Statements and Schedules, Form B-22, or any of the supporting documentation. In support of the foregoing, Debtors have relied on certain financial statements of Dr. Ellsworth's medical practice, which do not include her personal income taken in the form of salary, owner's draws, loans, and personal expenses paid by the medical practice. Because the documents and information underlying Debtor's income information are not those which reflect their true income, the calculation of disposable income and required plan payments is likewise inaccurate. Throughout this case, Debtors have manipulated their income and expense figures, changing both several times in response to LifeScape's objections and the Court's Decision, each time to produce different, but negative, income numbers.

(2)     Debtors' Position:

All of Dr. Ellsworth's income has been reported, whether classified by the business as a "draw," "loan," and/or personal expenses. The business expenses reported on the form 22C do not include those payments. All moneys paid, either directly to Dr. Ellsworth or for her personal benefit, are not reported as expenses of the company but are reported as income on the monthly operating reports and on her tax returns. These records have been consistent and unchallenged. The Court instructed the Debtors to

12

1702195v5/15788-0003

report gross income of the business, which they have done. Post-Petition income is not relevant to this proceeding and only post Petition expenses have been reported, in accordance with this Court's Under Advisement ruling.

**b)      Whether Debtors have complied with the mandates of the Court's Decision.**

(1)     LifeScape's Position:

In the Decision, the Court directed that "Debtors must submit an amended Form 22C and a second amended plan consistent with this decision within thirty days." Debtors failed to file any amended plan after the Decision was entered. Debtor's amended financial information which was purportedly filed in compliance with the Decision, included expense information not previously utilized in calculating Debtors' income, which resulted in claiming expenses (which correspondingly lowered income) that exceeded the expenses the Decision prohibited Debtors from claiming.

Debtors are now seeking confirmation of the same Chapter 13 Plan the Court previously refused to confirm, based on financial information that does not comply with the mandate of the Decision.

(2)     Debtor's position

There was no need to file an Amended Plan after the filing of the February 2009 amended form 22C as there was no change in the amount of disposable income available to fund a plan.

**(c)     Whether Debtors filed this case in bad faith to defeat the State Court Litigation and treat LifeScape's claim unfairly while paying other creditors in full?**

(1)     LifeScape's Position:

Debtors filed this case to defeat the State Court Litigation and unfairly target LifeScape and its claim. This case was filed immediately after Debtors lost in the court of last resort in the State Court Litigation. All other creditors listed in this case will be

13

paid in full.  Not only will all creditors other than LifeScape be paid in full, some are being paid by Dr. Ellsworth's medical practice during the pendency of this case, a practice which improperly reduces Debtors' income otherwise available to pay claims under a plan, and which improperly pays those creditors outside of a plan at a time when those claims should be subject to the automatic stay and await payment under a confirmed plan.

    (2) <u>Debtor's Position</u>:

  Debtors are not attempting to manipulate the Bankruptcy Code or process.  They are trying to get a fresh start.  They owe moneys on student loans, a car and a house.  The student loans are not to be paid in full for many years.  Bankruptcy law provides that it is appropriate to make regular payments on that type of debt, since its last payment is due beyond the life of the plan.  The same applies to the home mortgage.  The car payment is a 60-month car loan, which began two months prior to the filing of this case.  If payments were to be made through the plan instead of by the medical practice, there would actually be less money available to LifeScape, as the trustee would take a fee for the collection and payment of the car and the Debtors would have an increased personal tax burden.  If the Debtors had credit card debt, it would be treated in the same manner as is LifeScape. They simply do not have that debt.  LifeScape benefits from the credit responsibility shown by the Debtors.  The Debtors are simply trying to get a fresh start.

**VII. EXHIBITS.**

  **a)** **<u>LifeScape's Exhibits</u>:**

  1. Deposition transcript of Jonathan Moser and all exhibits identified and marked therein

  2. Family Practice of Scottsdale Owner Distributions

  3. Loans from Company

  4. Personal Expenses Paid by Company

14

| | | |
|---|---|---|
| 1 | 5. | Summary of Personal Expenses Paid by Company |
| 2 | 6. | Medical Practice Inventory |
| 3 | 7. | 12/31/06 Financial |
| 4 | 8. | <u>First</u> Twelve Month Income Statement ending December 31, 2006 |
| 5 | 9. | All Monthly Business Operating Statements filed by Debtors in this |
| 6 | | Chapter 13 case |
| 7 | 10. | Statement of Revenue & Expenses ending February 28, 2007 |
| 8 | 11. | Statement of Revenue & Expenses ending March 31, 2007 |
| 9 | 12. | Salary for Jessica Ellsworth [from January 2007 through March 2009] |
| 10 | 13. | Income Statement for the Three Months ending March 31, 2009 |
| 11 | 14. | Payroll Tax Expenses |
| 12 | 15. | Office Inventory |
| 13 | 16. | Twelve Months Income Statement ending December 31, 2008 |
| 14 | 17. | 2006 Tax Return |
| 15 | 18. | 2007 Tax Return |
| 16 | 19. | 2008 Tax Return |
| 17 | 20. | Schedule of Auto Loan Payments |
| 18 | 21. | <u>Second</u> Twelve Month Income Statement ending December 31, 2006 |
| 19 | 22. | Uniform Residential Loan Application for mortgage loan for Debtors' |
| 20 | | residence |
| 21 | 23. | Loan Application for loan on Mercedes |
| 22 | 24. | All exhibits listed or utilized by Debtors |
| 23 | 25. | All Statements and Schedules, pleadings, and other papers filed in this case |
| 24 | | and all amendments and exhibits thereto |
| 25 | **b)** | **Debtors' Exhibits:** |
| 26 | 1. | Chapter 13 Petition and Schedules; |

1702195v5/15788-0003

2. Amended Chapter 13 Means Test dated July 3, 2008
3. Amended Schedule I & J and Means Test dated February 4, 2009
4. 2006 Individual Income Tax Returns
5. 2007 Individual Income Tax Returns
6. 2008 Individual Income Tax Returns
7. Warranty Deed dated 11/30/05 and Settlement Statement dated July 11, 2005
8. Family Practice of Scottsdale, Statement of Revenues Expenses – Income Tax Basis, For the 12 months ending 12/31/06
9. Family Practice of Scottsdale, Statement of Revenues & Expenses – Income Tax Basis, For the 12 months ending 12/31/06
10. Family Practice of Scottsdale, Owner Distributions, For the period 9/06 to 2/07
11. Family Practice of Scottsdale, Statement of Cash Flow, For the 12 months ended 12/31/07
12. Family Practice of Scottsdale, Summary of Monthly Expenses, For the period 4/07 to 12/08
13. Family Practice of Scottsdale, Statement of Cash Flow, For the 2 years and 3 months beginning 1/07 to 3/31/09
14. Family Practice of Scottsdale, Total and Average Monthly Expenses, For the period 4/07 to 3/09
15. Family Practice of Scottsdale, Summary of Average Monthly Expenses, For the period 4/07 to 3/09
16. Family Practice of Scottsdale, Cash Flow Adjustments from the Medical Practice Net Income, For the 2 years 3 months beginning 1/07 ended 3/31/09
17. Family Practice of Scottsdale, Owner Distributions (Owners Draw), For the

period 9/06 to 3/09

18. Family Practice of Scottsdale, Owner Distributions (Loans from Company), For the period 9/06 to 3/09

19. Family Practice of Scottsdale, Owner Distributions (Personal Expenses Paid by Company), For the period 9/06 to 3/09

20. Family Practice of Scottsdale, Owner Distributions (Summary), For the period 9/06 to 3/09

21. All Monthly Operating Reports from March 2007 through July 2009

22. Family Practice of Scottsdale, Statement of Revenues and Expenses, For the period beginning 9/06 and ending 2/07

23. Publication Notice for Family Practice of Scottsdale, PLLC

24. Trustee recommendation regarding Second Amended Plan, filed on September 18, 2008 at ECF docket number 85.

    **c)**     **Evidentiary Objections, Issues, and Procedure:**

The parties agree that all exhibits listed herein may be admitted into evidence without the formality of foundational testimony. The foregoing agreement is for the purpose of procedural efficiency in admitting exhibits only, and the parties reserve all their rights, defenses, and arguments as to the content of the exhibits and the evidentiary weight to be given any and all exhibits.

**VIII. WITNESSES.**

    **a)**     **LifeScape's Witnesses:**

        1)     Jonathan Moser

        2)     Jessica Ellsworth

        3)     Kenneth Ellsworth

        4)     Foundational witnesses if necessary to testify to authenticity of any document.

1702195v5/15788-0003

|   |   |   |   |
|---|---|---|---|
| 1 | | 5) | All witnesses listed or called by Debtor. |
| 2 | **b)** | **Debtors' Witnesses:** | |
| 3 | | (1) | Jessica Ellsworth |
| 4 | | (2) | Kenneth Ellsworth |
| 5 | | (3) | Jonathan Moser |
| 6 | | (4) | Ronald Hoffbauer |
| 7 | | (5) | All witnesses listed or called by any other party. |

DATED August 28, 2009.

GALLAGHER & KENNEDY, P.A.  DECONCINI MCDONALD YETWIN & LACY, PC

By: */s/ Joseph E. Cotterman (013800)*
    Joseph E. Cotterman
    2575 East Camelback Road
    Phoenix, Arizona 85016-9225
    Attorneys for LifeScape Medical
    Associates, P.C.

By: */s/Lawrence D. Hirsch (004982)*
    7310 North 16th Street, Suite 330
    Phoenix, AZ 85020
    Attorneys for Debtors

By: */s/ Ronald L. Hoffbauer (06888)*
    P.O. Box 10434
    Phoenix, Arizona 85064
    Attorney for Edward J. Maney,
    Chapter 13 Trustee

1702195v5/15788-0003